THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MITCHELL DAVID YOUNG, Defendant-Appellant.

Second District   No. 76-459

Opinion filed May 22, 1978.

Ralph Ruebner, Michael Mulder, and Allen L. Wiederer, all of State Appellate Defender's Office, of Elgin, for appellant.

Dallas C. Ingemunson, State's Attorney, of Yorkville (Phyllis J. Perko and Steven M. Deitsch, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE WOODWARD delivered the opinion of the court:

Defendant, Mitchell Young, was indicted for the murder of Thomas Murphy. Prior to trial a hearing was conducted to determine defendant's fitness to stand trial. On December 18, 1974, a jury found the defendant unfit to stand trial, and he was remanded to the Illinois Security Hospital at Chester. On November 19, 1975, another fitness hearing was conducted at which defendant was found fit to stand trial. Defendant waived his right to a jury trial and a bench trial was commenced.

At trial it was established that on August 29, 1974, the body of a male Negro, identified as Thomas Murphy, was discovered on Jetter Road in Little Rock Township. Murphy's body contained several stab wounds; death was caused by the severence of the carotid artery, done by a sharp instrument. On either October 4 or 5, 1974, in a telephone conversation with Larry Johnson of the Anaheim, California police department, the sheriff of Kendall County was informed that a knife connected with the death of Murphy could be found in the vicinity of the Young residence in Aurora, Illinois. The sheriff was also told by Detective Johnson that a red and white pickup truck, owned by Paul Young, defendant's father, had blood stains on the inside of the right hand door and on a rug inside the truck which was used as a seat cover. Investigation of the area revealed a knife which was found in a wooded area across the street from the Young residence. An examination of the pickup truck revealed dark stains on the seat cover, on a decorative chrome strip along the right-hand door and along the bottom of the right-hand door; it was later determined that these spots were human blood.

On October 4, 1974, defendant was interviewed by Detective Larry Johnson at the Orange County jail, in California, while in custody on a California charge. Following a discussion of that charge with Detective Johnson, defendant revealed that while visiting his parents in Illinois he picked up a male Negro hitchhiker in the vicinity of O'Hare Airport. He was driving his father's red and white pickup truck. As he approached the area of Sugar Grove, Illinois, defendant decided he would kill the hitchhiker. He drove to a dirt road where he stopped on a pretext that the truck had a flat tire. Both men left the truck; defendant got out on the driver's side, walked around the truck and stabbed the hitchhiker in the back. When the hitchhiker turned around, defendant stabbed him in the front. There was a struggle during which the hitchhiker tried unsuccessfully to get into the truck, and as a result blood got on the truck. While attempting to cut the hitchhiker's throat, defendant made a

statement to the effect that, "This is for all of us that you have done this to."

When he had completed the act defendant left in the pickup truck. He stopped to clean some of the blood off himself and the truck with a towel which he threw into a creek running alongside the road. He returned to his parents' home, at which time he threw the knife into a wooded area.

The case for defendant was based upon the testimony of two psychiatrists who had examined defendant after the crime, and the testimony of defendant's parents and a former girl friend. Expert and lay witnesses alike were of the opinion that on August 29, 1974, defendant was suffering from a mental disease or defect (paranoid schizophrenia, in the opinion of the experts) as a result of which he was not able to appreciate the criminality of his conduct and lacked the ability to conform his conduct to the requirements of the law. In addition, the sheriff testified that defendant had attempted to commit suicide while in the Kendall County jail.

In rebuttal, Detective Johnson testified that based upon defendant's statement to the police concerning his conduct at the time of the crime, he was of the opinion that defendant was sane at the time of the crime.

■■ Defendant contends first, that the State failed to prove beyond a reasonable doubt that he was sane at the time he committed the offense alleged. While all men are presumed sane, once the defense introduces evidence of insanity the presumption of the defendant's sanity no longer prevails and the State must prove beyond a reasonable doubt that at the time of committing the crime charged, the defendant was legally sane. (*People v. Harrington* (1974), 22 Ill. App. 3d 938, 317 N.E.2d 161.) The State, however, is not required to introduce explicit opinion testimony of the defendant's sanity in order to satisfy its burden of proof, but may satisfy its burden by other facts in evidence and by the opinion of nonexpert witnesses as to an individual's sanity based upon personal observation. *People v. Harrington* (1974), 22 Ill. App. 3d 938, 944, 317 N.E.2d 161, 165.

There was ample evidence at defendant's trial from which the trial court could properly determine that defendant was sane beyond a reasonable doubt at the time of the crime. Apart from the lay testimony of Detective Johnson, the evidence established that having picked up the hitchhiker, defendant made a deliberate decision to kill him. Defendant was able to describe the area in which he picked up the hitchhiker and the location where the killing took place; he even conceived of an excuse to stop the truck. Such evidence shows a plan or design by which the offense was to be committed. (See *People v. Elliott* (1975), 32 Ill. App. 3d 654, 336 N.E.2d 146.) Defendant was able to recall the details of the struggle including the statement he made to the victim; he was also able to explain

how the various blood stains appeared on the outside and inside of the pickup truck. Further, upon leaving the scene of the crime, defendant took time to clean some of the blood off of himself and off of the truck with a towel which he then disposed of; he also disposed of the knife which he had used in the killing. Such conduct indicates that defendant understood that what he had done was wrong, and he was intentionally destroying the evidence of his crime. See *People v. Ellis* (1976), 39 Ill. App. 3d 373, 374, 350 N.E.2d 326, 328; see also *People v. Lane* (1974), 23 Ill. App. 3d 287, 319 N.E.2d 90.

■■ Apart from this evidence, there was the lay opinion of Detective Johnson that defendant was sane at the time he killed Murphy. Defendant argues that Detective Johnson's lay opinion is entitled to little weight as his only observation of defendant was more than a month after the crime and does not overcome the testimony of defendant's expert and lay witnesses that defendant was insane at the time of the killing. Both psychiatrists who testified for defendant were of the opinion that he was suffering from paranoid schizophrenia; however, examination of that opinion testimony reveals certain weaknesses. Dr. Nelson did not examine defendant until almost three weeks after the murder. He testified that his opinion depended to a large degree upon what defendant had told him, which, Dr. Nelson admitted, might be self-serving and clouded by his desire for self-protection. Dr. Nelson also explained that a disease such as the one defendant allegedly suffered from could come and go. Dr. Schlageter did not examine defendant until almost three months after the crime, and then for a period of an hour and a half. Dr. Schlageter based his conclusions concerning defendant upon what defendant had told him and not upon any formal psychological or physical tests. Like Dr. Nelson, Dr. Schlageter conceded that it was possible that defendant had told him a self-serving story during examination. On cross-examination, he admitted that there could be other explanations for defendant's behavior, such as defendant's intake of drugs. Like Dr. Nelson, Dr. Schlageter testified that defendant's alleged mental illness could go into remission and could fluctuate. In determination of a defendant's sanity, the trial court is not obliged as a matter of law to accept ultimate opinions of psychiatrists. *People v. Banks* (1974), 17 Ill. App. 3d 746, 308 N.E.2d 261.

Similarly, examination of the lay testimony presented on defendant's behalf reveals several weaknesses. The testimony of defendant's parents and former girl friend was for the most part a recitation of defendant's history prior to the murder. In summary, testimony revealed defendant's hyperactiveness as a child, which continued to manifest itself during his school years; progressively worsening dress and grooming habits; rebellion against his parents; certain instances of bizarre behavior and defendant's use of marijuana and cocaine. By their very relationship to the

defendant, the testimony of his parents could be viewed as biased. (See *People v. Elliott.*) Neither parent had much of an opportunity to observe defendant on the day of the murder. (Defendant's girl friend had remained in California.) Defendant's mother testified that in her opinion defendant could not conform his conduct to the requirements of the law; however, she also testified that while defendant took his father's pickup truck without permission and took his father's money boxes on the day in question, defendant (after having committed the murder) returned the truck and the money boxes and apologized to his parents for his conduct. As for defendant's father, his opinion that defendant was insane at the time of the crime was based for the most part on defendant's rebellious attitude toward him, and his belief that defendant was using drugs.

■■ A court of review will not disturb the finding of the trier of fact in an insanity case unless the finding was so improbable or unsatisfactory as to raise a reasonable doubt concerning defendant's sanity at the time of the crime. (*People v. Ward* (1975), 61 Ill. 2d 559, 338 N.E.2d 171.) The finding of the trial court here, in light of all the evidence, was neither improbable nor unsatisfactory and does not warrant reversal.

Defendant contends that reversible error occurred during the second fitness hearing when the trial court stated to the jury that the defendant is presumed to be fit, mentally and physically, to stand trial. The trial court also instructed the jury that the State had the burden of proving by a preponderance of the evidence that defendant was able to understand the nature of the proceedings against him and to assist in his defense.

In *People v. Yonder* (1969), 44 Ill. 2d 376, 256 N.E.2d 321, *cert. denied* (1970), 397 U.S. 975, 25 L. Ed. 2d 270, 90 S. Ct. 1094, the defendant there complained of the following instruction given during his fitness to stand trial hearing:

> " 'The Court instructs the jury that a person is presumed to be sane until the contrary is shown. Once evidence tending to show insanity is introduced then the State has the burden of proving by the preponderance or greater weight of the evidence that the petitioner is sane.' " (44 Ill. 2d 376, 384, 256 N.E.2d 321, 326.)

The defendant claimed that this instruction confused the jury by improperly stating that he had the burden of proving his insanity. Our Illinois supreme court stated:

> "If we were to read only the first sentence of the instruction then the defendant's assertion would be correct. However, when the instruction as a whole is considered, the mention of the presumption of sanity is at most harmless error. The presumption, as stated, in this instruction, is that all persons are sane and personally responsible for their acts until insanity is made to appear by the evidence. When such evidence is introduced, then

the presumption of sanity ceases and the prosecution must prove the sanity of the accused by a preponderance of the evidence. *People v. Bender*, 20 Ill. 2d 45." 44 Ill. 2d 376, 384, 256 N.E.2d 321, 326.

■■ As the trial court in the case before us instructed the jury properly on the burden of proof, likewise here as in *Yonder* the mention of the presumption of sanity is harmless error. Thus the case at bar is distinguishable from the facts in *People v. Bedford* (1964), 31 Ill. 2d 227, 201 N.E.2d 420, relied upon by the defendant; there the court remanded for a new trial as throughout the sanity hearing the jury was constantly misinformed as to the burden of proof.

Finally, defendant contends that it was error to admit Detective Johnson's testimony concerning defendant's statements while in custody, and after defendant had requested a lawyer.

Numerous cases have held that a confession or statement obtained from a defendant by interrogation which continued after the defendant had requested an attorney is a violation of the dictates of our United States Supreme Court in *Miranda v. Arizona* (1966), 384 U.S. 438, 16 L. Ed. 2d 694, 86 S. Ct. 1602. (*People v. Henenberg* (1973), 55 Ill. 2d 5, 302 N.E.2d 27.) In the case before us, defendant had been given *Miranda* warnings prior to his discussion of the California charge with Detective Johnson. Detective Johnson explained to defendant that he could continue to exercise his right to remain silent, and then asked defendant if he wanted to discuss the hitchhiker incident. Defendant replied that he thought he might want a lawyer before he would discuss the incident. Detective Johnson then told the defendant that it was up to him (the defendant) and that they (the police) were available if he wanted to discuss the matter. Defendant paused for about 30 seconds to a minute and then stated, "I'll tell you about it" without further reference to a lawyer.

■■ The facts in this case render it readily distinguishable from the facts in *People v. Washington* (1976), 41 Ill. App. 3d 475, 354 N.E.2d 501, and *People v. Parnell* (1975), 31 Ill. App. 3d 627, 334 N.E.2d 403, relied on by defendant. In both those cases law enforcement officers continued to interrogate each defendant after he or she had indicated a desire to consult with an attorney. Since no such questioning occurred in the present case, the defendant's rights under *Miranda* were not violated.

For the foregoing reasons, the judgment of the circuit court of Kendall County is affirmed.

Affirmed.

BOYLE and NASH, JJ., concur.