THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CONRAD BROWN, Defendant-Appellant.

First District (3rd Division)   No. 79-1921

Opinion filed March 17, 1982.

Frederick F. Cohn, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr and Mary Ellen Dienes, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE WHITE delivered the opinion of the court:

Defendant, Conrad Brown, was indicted for arson, the murder of Robert Fender, and the murder of Thomas Patzke. He was tried by a jury and found guilty of arson and of the voluntary manslaughter of both Fender and Patzke. Under the extended term provision of the sentencing statute, he was sentenced to three concurrent terms of 14 years each for the three separate offenses. Defendant now appeals.

The following evidence was adduced at trial. In September 1971, defendant started his own business when he purchased a store in the city of Chicago. At the time of the events in question, defendant's business properties included a store, an adjacent bowling alley and tavern and other nearby land. Defendant lived in quarters in the back of his store.

Due to an accumulation of business debts, on June 24, 1975, defendant filed a chapter 11 bankruptcy action. On May 13, 1976, the bankruptcy court gave the Small Business Administration (SBA) leave to foreclose on a loan which it had made to defendant.

Thomas Patzke, a SBA loan officer, and Robert Fender, an auctioneer who did work for the SBA on a contractual basis, were assigned to liquidate defendant's loan. On March 23, 1977, Patzke and Fender made a field visit to defendant's store to take inventory of the merchandise pledged as collateral for defendant's loan and to ask for peaceful possession. Shortly after Patzke and Fender arrived, defendant asked all of his employees to leave the premises for a while. As to what transpired in the store after this among Patzke, Fender and defendant, we have only defendant's testimony to rely upon.

Defendant testified as follows. Defendant told Patzke that he was worth $200,000.00 and that he would give Patzke all the cash money he had if Patzke would give defendant a few more days. Patzke asked defendant how much money he had and defendant said that he had eight or nine thousand dollars. Patzke then made a phone call. That such a phone call was made was corroborated by James Burke, Patzke's supervisor.

Defendant further testified that after Patzke returned from his phone call, Patzke told Fender to take the money. Defendant went back into his living quarters to get the money. Then Fender, accusing defendant of stalling for time, pushed open the door to defendant's living quarters and Patzke and Fender entered. Defendant handed the money to Fender who kept half and gave the other half to Patzke.

Defendant testified that Fender next asked him for the keys to the store; when defendant refused, a scuffle ensued in which Fender and Patzke received injuries which caused their deaths. This struggle took place outside of defendant's living quarters.

Defendant testified that towards the end of the struggle he smelled smoke coming from his living quarters, so he started moving towards the back of the store. He looked back and saw Fender staggering and bleeding. Defendant hurried through the store and through the bowling alley adjacent to the store.

A massive fire destroyed defendant's store. The bodies of Patzke and Fender were found inside the building. When Patzke was found, his hands were tied in front of him. At trial, Dr. Robert Stein, chief medical examiner of Cook County, testified that both Fender and Patzke died from cranial-cerebral injuries in association with acute carbon monoxide toxicity. Dr. Stein testified that Fender suffered from seven head lacerations that were the result of seven individual blows. There were several lacerations on Patzke's head. Dr. Stein further testified that the wounds on each man were consistent with each individual having been struck with a blunt instrument.

Shortly after defendant came out of his building, police and firemen were at the scene. Although defendant remained in the vicinity for a

while, he did not inform police or firemen that two men were still in the burning building. When asked at trial whether he remembered hitting the men and leaving them behind, defendant testified, "I guess you could say that." A number of witnesses who saw defendant after the fire testified that they noticed nothing unusual about defendant's appearance or behavior.

Defendant testified that during a portion of the night after the fire he stayed with his former wife at her apartment. Twice the police went there looking for defendant; he avoided them. The morning after the fire, defendant, with his attorney, surrendered to the police. Defendant had with him a bottle of arsenic and told police that unless he could speak to the mayor he would kill himself and many others.

## I

Defendant first contends that the trial court erred in refusing to instruct the jury as to self-defense and defense of dwelling. An instruction regarding a legally recognized defense which has some foundation in the evidence must be given by the trial court and even very slight evidence on a given defense entitles a defendant to an instruction on that defense. (*People v. Harris* (1976), 39 Ill. App. 3d 805, 350 N.E.2d 850.) In determining whether there was any evidence that required an instruction of self-defense or defense of dwelling, we must review the evidence adduced at trial in light of the pertinent statutes.

Self-defense is defined by Illinois statute as follows:

"A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony." Ill. Rev. Stat. 1977, ch. 38, par. 7—1.

In determining whether an instruction on self-defense should have been given, the trial court had to rely upon defendant's testimony as to what transpired on March 23, 1977. According to defendant, there was a struggle in a storage area of the building with the two men over his store keys. During the struggle defendant was pushed to the ground. The two men were also on the floor struggling for the keys. Defendant picked up a pipe and struck Fender who fell back. At that point the struggle was apparently at a standstill. Defendant, however, had Patzke tie up Fender. Then, when neither Patzke nor Fender was threatening defendant, he

began striking both men repeatedly with a piece of pipe. Defendant testified that he did not know why he hit them.

■■ Relying on defendant's own testimony, we find no evidence that defendant reasonably believed it was necessary for him to beat Patzke and Fender with a length of pipe to "prevent imminent death or great bodily harm." Defendant was not under attack when he began beating the victims nor was it reasonable for him to believe that force was necessary to prevent great bodily harm to himself. Thus, the jury instruction on self-defense was properly refused by the trial court.

Defense of dwelling is defined by Illinois statute as follows:

> "A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to prevent or terminate such other's unlawful entry into or attack upon a dwelling. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if:
>> (a) The entry is made or attempted in a violent, riotous, or tumultuous manner, and he reasonably believes that such force is necessary to prevent an assault upon, or offer of personal violence to, him or another then in the dwelling, or
>> (b) He reasonably believes that such force is necessary to prevent the commission of a felony in the dwelling." Ill. Rev. Stat. 1977, ch. 38, par. 7—2.

■■ Based upon the testimony of defendant recited above, there was no evidence that would support an instruction on the defense of dwelling for the following reasons: (1) the struggle took place in a storage area of the store and not in defendant's living quarters or "dwelling;" (2) at the time defendant began beating Patzke and Fender, the struggle had ceased; the men were subdued and defendant had no reasonable belief that such force was necessary to prevent the commission of a felony or an assault in the dwelling. Therefore, the trial court also properly refused the instruction on defense of dwelling.

## II

Defendant next argues that the trial court erroneously refused to instruct the jury on the offense of involuntary manslaughter. Defendant contends that such an instruction was proper because there was evidence that defendant acted recklessly when he abandoned the two injured men in the burning building.

The crux of the offense of involuntary manslaughter is recklessness. (*People v. Simpson* (1978), 74 Ill. 2d 497, 504, 384 N.E.2d 373.) "A person

is reckless or acts recklessly, when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow * * *." Ill. Rev. Stat. 1977, ch. 38, par. 4—6.

■■ In the case at bar, none of defendant's acts were indicative of mere recklessness. A review of defendant's conduct underscores this conclusion. Defendant repeatedly beat the victims about their heads with a pipe; defendant fled the burning building knowing he had left behind two seriously injured men; defendant failed to inform either police officers or firefighters at the scene of the fire that two men were trapped inside the burning building. Such conduct is not evidence of a conscious disregard of a substantial risk. Rather, defendant's conduct was willful and evidenced his intention to bring about the deaths of Patzke and Fender. Thus, defendant's tendered instructions on involuntary manslaughter were correctly refused.

### III

Defendant next contends that the State failed to prove beyond a reasonable doubt that defendant was sane at the time of the commission of the alleged crimes. While it is the general rule that all men are presumed sane, once defendant introduces evidence which raises doubt as to his sanity, the affirmative defense of insanity is placed in issue. (*People v. Varnado* (1978), 66 Ill. App. 3d 413, 418, 384 N.E.2d 37.) Once this defense is raised, the presumption of defendant's sanity no longer prevails and the State must prove beyond a reasonable doubt that the defendant was sane at the time of the alleged crime. *People v. Young* (1978), 60 Ill. App. 3d 351, 353, 376 N.E.2d 739.

The statutory definition of insanity reads:

"A person is not criminally responsible for conduct if at the time of such conduct, as a result of mental disease or mental defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." Ill. Rev. Stat. 1977, ch. 38, par. 6—2.

At trial, three psychiatrists testified in response to a hypothetical question, incorporating the facts of this case, that the hypothetical man was suffering from a mental disease at the time of the alleged crimes and as a result he was unable to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. Defendant contends that the State failed to meet its burden of proving defendant's sanity beyond a reasonable doubt because the testimony of the psychiatrists was not contradicted by other expert evidence or by the lay witnesses who testified. It is further argued that the activity of the defendant after the occurrence was bizarre and that it substantiated the conclusions of the doctors.

To meet its burden, however, the State is not required to produce expert testimony regarding defendant's sanity but may rely upon facts in evidence, and the opinions of nonexpert witnesses as to defendant's sanity based on personal observation. (*People v. Young* (1978), 60 Ill. App. 3d 351, 353.) Moreover, evidence of bizarre conduct does not compel a finding of mental disease or defect sufficient to exonerate one from criminal liability. *People v. Horton* (1975), 29 Ill. App. 3d 704, 711, 331 N.E.2d 104.

Upon review of the record, we find that there was sufficient evidence adduced at trial to support the jury's determination that defendant was sane beyond a reasonable doubt at the time of the crime. Defendant had never been in a mental institution and had never received mental treatment. Numerous witnesses testified that they saw and spoke to defendant soon after the fire and that there was nothing peculiar or strange about his actions or appearance. On the night of the fire, defendant successfully avoided the police. The next day he had his attorney accompany him to the police station where he surrendered. Police Investigator Markham, who questioned the defendant, testified that defendant did not appear to be "out of contact with reality" when he spoke with him.

■■ A court of review will not disturb the finding of the trier of fact in an insanity case unless the finding was so improbable or unsatisfactory as to raise a reasonable doubt concerning defendant's sanity at the time of the crime. (*People v. Young* (1978), 60 Ill. App. 3d 351, 355.) This is not the case here.

## IV

■■ Defendant next argues that the State failed to prove beyond a reasonable doubt that defendant was guilty of arson. By its very nature the crime of arson is usually incapable of direct proof and the evidence is often necessarily of a negative nature. (*Commerce Union Bank v. Midland National Insurance Co.* (1964), 53 Ill. App. 2d 229, 239, 202 N.E.2d 688.) The opportunity for commission of an arson, the motive inducing an arson, and the identity of the person accused of arson may all be established through circumstantial evidence. (*People v. Smith* (1976), 44 Ill. App. 3d 237, 241, 357 N.E.2d 1320.) Moreover, defendant's criminal intent to commit arson may be adequately proved by: (1) defendant's presence on the premises immediately before the fire; (2) defendant's previous threat to burn the premises; and (3) defendant's violent encounter with an individual at the premises shortly before the fire. (*People v. Alexander* (1966), 77 Ill. App. 2d 151, 155, 222 N.E.2d 172.) Evidence of prior threats is highly relevant in establishing a logical inference of guilt. *People v. Klisnick* (1979), 73 Ill. App. 3d 148, 156, 390 N.E.2d 1330.

Two witnesses, Sam Horowitz, defendant's landlord, and Ronald Deutsman, president of University National Bank, a creditor of defendant, testified that prior to the fire defendant had told them that he would burn down his store before losing it to creditors. Defendant testified that he was in the building when the fire started. Defendant further testified to a violent encounter with the two victims. A five gallon can was found in the store after the fire. A gas chromatography test revealed a small quantity of gasoline on the shoe defendant wore on the day of the fire. Two experienced firemen testified that the thick black smoke produced by the store fire indicated the presence of a petroleum-based fire accelerant. Firefighters also testified that the fire appeared to have two separate points of origin.

It is the function of the trier of fact to determine the credibility of witnesses, and its findings will not be disturbed unless the evidence is so unsatisfactory as to raise a reasonable doubt of defendant's guilt. (*People v. Klisnick* (1979), 73 Ill. App. 3d 148, 157.) Here, we find no reason to disturb the jury's verdict.

## V

Defendant next alleges that the accumulation of trial errors denied defendant a fair trial. The errors alleged by defendant are as follows.

■■ (1) Defendant first contends that the trial court erred in ruling that the expert opinion of the psychiatrists testifying as to defendant's sanity must be in response to a hypothetical question. Defendant maintains that each of the psychiatrists should have been permitted to give his opinion as to the defendant's state of mind at the time of the crimes. However, it has been held proper to limit the testimony of an examining psychiatrist to hypothetical questions. (*People v. Slago* (1978), 58 Ill. App. 3d 1009, 1013-14, 374 N.E.2d 1270.) This procedure was followed by the trial court and, accordingly, we find that no error resulted.

(2) Defendant next contends that prejudice occurred when the trial court prevented the defense from questioning Dr. Kelleher as to who requested that Dr. Kelleher examine defendant. Defendant maintains that it would have enhanced Kelleher's credibility if it were known to the jury that Kelleher examined the defendant at the request of the prosecution.

■■ Defendant relies upon *Davis v. Gulf, Mobile & Ohio R.R. Co.* (1971), 130 Ill. App. 2d 988, 272 N.E.2d 240. This case is inapposite as it involves impeachment of a witness, whereas the issue raised by defendant involves the bolstering of a witness. In any event, during defense counsel's direct examination, Dr. Kelleher testified that he examined defendant in his official capacity with the Psychiatric Institute of the Circuit Court of Cook County. Furthermore, defense counsel was permitted to argue to

the jury in his closing argument that Kelleher worked for the circuit court. Therefore, since Kelleher's credentials were fully disclosed to the jury, we are of the opinion that no prejudicial error occurred.

(3) Defendant next contends that the State was erroneously permitted to impeach the defendant with a prior inconsistent statement. We need not address this issue since defendant failed to preserve it for review by specifying it in his written motion for a new trial. Hence the issue is waived. *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.

(4) Defendant next contends that the trial court erred in refusing to permit the defense to introduce the full text of a statement used by the State to impeach defendant. During cross-examination, defendant testified that during an interview with Dr. Garvin he told the doctor that on the night before the fire he did sleep. However, defendant then qualified this testimony by explaining that what he meant was that he had only "lain down" for a few hours, but never really "slept" in the true sense of the word. In rebuttal, the State introduced the testimony of Dr. Garvin to prove that defendant had indeed slept on the night preceeding the fire. Garvin testified that defendant told him that on the night preceeding the fire "he slept" and "when he woke up the next morning he felt good."

Defendant maintains that the trial court erred in refusing defendant the opportunity to introduce the notes of the entire conversation between defendant and Garvin. In his offer of proof, however, defendant has not demonstrated how the remaining context of the statement would have rehabilitated him. Nor does he claim that the remainder of the conversation bore any relation to the impeaching matter, *i.e.*, whether or not defendant slept. Moreover, during cross-examination, defendant adequately explained what he meant by his remark, "I slept" to Dr. Garvin.

■■ In making an offer of proof, counsel must explicitly state what excluded testimony would reveal and not merely allude as to what might be divulged by such testimony. (*People v. Slaughter* (1977), 55 Ill. App. 3d 973, 371 N.E.2d 666.) Here, defense counsel never clearly articulated what the remainder of defendant's conversation with Dr. Garvin would have revealed, or why it was material to the issue of his sanity. Therefore, we cannot conclude that error resulted.

(5) Defendant next argues that the trial court improperly ruled, *in limine*, that Mr. Aronson, a defense witness, was subject to impeachment by a prior conviction for contempt of court.

Whether to allow impeachment by prior conviction is within the discretion of the trial court, and the test to be applied is whether the probative value of the evidence of the crime is substantially outweighed by danger of unfair prejudice. (*People v. Warmack* (1979), 73 Ill. App. 3d 783, 392 N.E.2d 334.) Our supreme court has held that crimes involving

dishonesty or false statements bear a relation to testimonial deceit and should be admissible for impeachment purposes. *People v. Spates* (1979), 77 Ill. 2d 193, 395 N.E.2d 563.

■■ Here, the defense witness was convicted of contempt of court for taking money privately while representing people through the Federal Defender Program. The trial judge ruled that these charges were relevant to the credibility of the witness and, therefore, the contempt citation would be admissible for impeachment purposes. We are of the opinion that the trial judge properly exercised his discretion and no unfair prejudice resulted to the defendant.

(6) Defendant next argues that prejudicial statements were made by the prosecutor in closing argument. In closing argument the prosecutor stated over the objection by defense counsel:

> "Here is a man, ladies and gentlemen, no history of mental illness, never had any mental problems in the past, and its just a one-shot deal. Just that day he had this break with reality, and he is not responsible for what he did, and let's send him back out in the community."

Specifically, defendant claims that these remarks misled the jury to believe that if defendant were acquitted for reasons of insanity he would immediately be returned to the community. Defendant argues that this remark was a misstatement of the law because Illinois statute provides that if defendant were found innocent by reason of insanity he would be returned to the community only upon a finding that he was no longer insane. Defense counsel relies on section 115—3(b) of the Code of Criminal Procedure of 1963 and section 5—2—4(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, pars. 115—3(b), 1005—2—4(a)), which provide that if a defendant is found innocent by reason of insanity, "a hearing shall be held pursuant to the Mental Health Code * * * to determine whether the defendant is in need of mental treatment. If the defendant is found to be in need of mental treatment the court shall enter an order so specifying."

The standard for reviewing the prosecutor's argument is that improper comments during closing argument do not warrant reversal unless the argument was so seriously prejudicial that it deprived defendant of a fair trial. (*People v. Myers* (1966), 35 Ill. 2d 311, 335, 220 N.E.2d 297.) In *Myers* the prosecution argued that if a jury would find defendant not guilty by reason of insanity, they would be "gambling" that he would go to a security hospital. In *People v. Fox* (1970), 131 Ill. App. 2d 604, 264 N.E.2d 502, the court, citing *Myers*, refused to reverse where the prosecutor in closing argument stated that defendant could be out in the street two days after being put in an institution.

■■ Here, the prosecutor's comment was improper because it implied

that defendant would be unconditionally released if he were found innocent by reason of insanity. However, this comment was no more inflammatory than those before the court in *Myers* or *Fox*. Furthermore, defendant's sanity was not the sole issue during the trial; there was ample evidence of defendant's guilt. Finally, we do not believe that the prosecutor's comment was so prejudicial as to deprive defendant of a fair trial and, therefore, we find no reversible error.

(7) Defendant finally contends that he was denied a fair trial because his trial counsel's argument was improperly limited. First, in regard to the arson charge, defense counsel attempted to argue to the jury that if the prosecution had evidence that neither victim smoked, such evidence would have been proffered to the jury to show that the fire could not have been started by a careless smoker. Second, defense counsel attempted to argue that because the prosecution had the power and funds to retain psychiatrists, the prosecution would have produced any expert testimony that was available to establish that defendant was sane at the time of the crime. On each of the two occasions of which defendant complains, objections to defense counsel's argument by the prosecution were sustained. In each case, however, defense counsel later successfully argued to the jury that no such evidence had been adduced at trial.

■■ This court has held that it is improper for defense counsel to engage in unsupported speculation or allegations as to the reasons for the absence of testimony. (See *People v. Jablonskis* (1978), 64 Ill. App. 3d 559, 563, 381 N.E.2d 774.) Here, the record reveals that the trial court properly restricted defense counsel from speculating as to why the prosecution did not present certain evidence. Furthermore, we fail to see how defendant was denied a fair trial when it is apparent from the record that he was ultimately successful in stressing the fact that certain evidence was never adduced at trial.

Finally, in regard to defendant's argument that an accumulation of trial errors denied him a fair trial, this court will not reverse a judgment merely because error has been committed unless it appears that real justice has been denied or that the finding of guilty may have resulted from such error. (*People v. Harris* (1979), 70 Ill. App. 3d 363, 369, 387 N.E.2d 1109.) Here, defendant received a fair and impartial trial and there was ample evidence of his guilt. Therefore, we will uphold the decision of the trial court.

## VI

Defendant was convicted of three felonies: (1) arson, (2) the voluntary manslaughter of Fender, and (3) the voluntary manslaughter of Patzke. He assigns as error the imposition of three extended term sentences for these crimes to run concurrently. It is argued that since the

jury convicted him of voluntary manslaughter and found that his actions were provoked, the imposition of an extended term was erroneous. Section 5—5—3.2(b) of the Unified Code of Corrections provides that an extended term may be imposed "[w]hen a defendant is convicted of any felony and the court finds that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(b)(2).) Defendant relies on *People v. Evans* (1981), 87 Ill. 2d 77, 429 N.E.2d 520. In *Evans* defendant received an extended term of 10 years' imprisonment for voluntary manslaughter and the maximum term of 5 years for the aggravated battery. Our supreme court held that the extended term sentence was error on these narrow grounds, "because the evidence indicated that *all* of Evans' actions toward Davenport were committed under the belief, although unreasonable, that he was acting in self-defense, we cannot say the aggravated battery offense was accompanied by wanton cruelty."

This court has held that an extended-term sentence is appropriate where there is ample evidence of exceptionally brutal or heinous behavior indicative of wanton cruelty. *People v. Eckles* (1980), 83 Ill. App. 3d 292, 305, 404 N.E.2d 358.

■■ Defendant repeatedly beat his victims about the head inflicting fatal injuries. Then he left them helpless in the building which he had set afire. In this case, unlike *Evans*, there was no evidence of either self-defense or defense of dwelling. We find there was ample evidence to support the trial judge's determination that defendant's conduct was heinous and indicative of wanton cruelty.

Finally, defendant argues that an extended-term sentence was inappropriate due to defendant's background as a law abiding, community-minded businessman. The finding that defendant's conduct was heinous and indicative of wanton cruelty was sufficient for the imposition of an extended term sentence. *People v. Eckles* (1980), 83 Ill. App. 3d 292, 305.

For the reasons stated above, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McNAMARA and RIZZI, JJ., concur.