Timothy MEDLEY, Petitioner,

v.

Richard GRAMLEY, Respondent.

No. 97 C 961.

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 26, 1997.

Timothy Medley, Galesburg, IL, Pro se.

Arleen C. Anderson, Paul James Chevlin, Illinois Attorney General's Office, Chicago, IL, for Respondent.

### OPINION AND ORDER

NORGLE, District Judge.

Before the court is Timothy Medley's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (1995). For the following reasons, the petition is denied.

## I. BACKGROUND

On July 16, 1991, at approximately 3:50 p.m., Willie Adams ("Adams") observed Timothy Medley ("Petitioner") approach a parked vehicle near the corner of Karlov and Gladys streets in Chicago, Illinois. Adams noticed Petitioner having a "heated" conversation with the car occupant Kenneth Gilbert ("Gilbert"). Eventually, Gilbert got out of the car and followed Petitioner down an alley adjacent to Karlov street. Emotions escalated as the two men continued their conversation behind a building. Adams testified that as Gilbert walked away, Petitioner pulled a knife from his sock, clenched it in his fist, and moved toward Gilbert. At that moment, Adams yelled at Gilbert to "watch your back!" Gilbert turned, saw Petitioner approaching, and ran down the alley. Petitioner eventually caught Gilbert, at which time, Adams saw Petitioner stab Gilbert twice.

Murtis Brown ("Brown") was in her house on south Karlov street when she saw Gilbert and the Petitioner engaged in an animated discussion. She observed the two men enter the alley. About two minutes later, Gilbert came running out of the alley with Petitioner in pursuit and carrying a knife. Brown lost sight of the two men as they ran behind other buildings. Although she never saw Petitioner stab Gilbert, Brown did notice blood on the knife blade when Petitioner returned to the area of Gilbert's parked car.

Thomas O'Grady ("O'Grady") was a police officer assigned to investigate the killing of Gilbert. On July 17, 1991, O'Grady arrested Petitioner as he walked out of a drug treatment facility. Petitioner was brought to the police station where he was advised of the charges against him and read his Miranda rights. Petitioner waived his rights and made statements to O'Grady. Although Petitioner's statements were not exhaustive, they were sufficiently inculpating to require the presence of an assistant state's attorney. O'Grady testified that Petitioner never mentioned Gilbert swinging a pipe at him in his initial statements.

Later in the afternoon of July 17, Petitioner gave a formal written statement in the presence of O'Grady and an assistant state's attorney. Petitioner stated that on July 16, 1991, he saw Gilbert parked outside his house on south Karlov street. They started to have an argument. Petitioner suggested they go into the alley. As hostilities escalated, Petitioner claimed that Gilbert swung at him. Petitioner then stated that he pulled a knife and stabbed Gilbert twice. Gilbert ran off, and Petitioner pursued. Petitioner eventually caught Gilbert, stabbed him a couple more times, threw the knife in a vacant lot, and walked back to his house. After reviewing the written statement, Petitioner added that when Gilbert originally swung at him in the alley, it was with "some kind of pipe."

In November 1992, Petitioner waived his right to a jury trial in favor of a bench trial. On November 25, 1992, Petitioner testified in his own behalf. Petitioner stated that prior to the events of July 16, 1991, he had seen Gilbert on more than one occasion outside his home selling drugs. Petitioner was upset because he feared Gilbert's presence could jeopardize his status with the Department of Children and Family Services ("DCFS"). Petitioner testified that at the time of the incident, his children were in the custody of the DCFS. However, the trial court would not allow Petitioner to testify about what action the DCFS might have taken had it discovered Gilbert was selling drugs outside Petitioner's home.

Petitioner further testified that on July 16, 1991, he was returning from a methadone treatment clinic when he saw Gilbert parked outside his home. The two men exchanged angry words and proceeded to the alley. Petitioner testified that he began to walk away when Gilbert swung at him with a pipe and knocked him down. After Petitioner got to his feet, he stabbed Gilbert four times. As Gilbert ran to his car, Petitioner stabbed him again. On cross-examination, Petitioner admitted that he could not recall if he initially told O'Grady that Gilbert swung at him with a pipe.

On December 22, 1992, Petitioner was convicted of first degree murder and sentenced to 25 years imprisonment. On direct appeal, Petitioner argued that (1) the state improperly impeached him by failing to perfect the impeachment, (2) the trial court erred by sustaining the state's objection to Petitioner's testimony about his status with the DCFS, (3) the evidence only supported a second degree murder conviction, and (4) the Illinois first degree murder statute was unconstitutional. On March 25, 1993, the Illinois appellate court rejected Petitioner's arguments and affirmed the conviction.

On June 24, 1996, Petitioner sought leave to appeal to the Illinois Supreme Court. Petitioner raised the following issue: whether the appellate court wrongfully held that a party who initiates a verbal argument has no legal claim to second degree murder. On October 2, 1996, the Illinois Supreme Court summarily denied the appeal.

On November 27, 1995, Petitioner sought post-conviction relief in the Circuit Court of Cook County. In his pro-se petition, Petitioner argued that (1) the trial court committed reversible error by admitting hearsay testimony, (2) insufficient evidence was presented at trial to support a first degree murder conviction, (3) the burden of proof should have shifted to the deceased, and (4) his trial counsel rendered ineffective legal assistance. However, because Petitioner failed to provide proper supporting affidavits and evidence, the circuit court summarily dismissed the petition on April 15, 1996.

Subsequently, Petitioner appealed the dismissal of his post-conviction petition, arguing the same claims before the circuit court. However, the Illinois appellate court once again rejected all of Petitioner's claims. Petitioner did not seek leave to appeal his post-

conviction arguments to the Illinois Supreme Court.

On February 11, 1997, Petitioner filed the instant pro-se petition for a writ of habeas corpus. Petitioner raises the following claims: (1) Petitioner was denied the right to present evidence; (2) ineffective assistance of counsel; (3) improper impeachment of Petitioner on cross-examination; (4) the Illinois first degree murder statute is unconstitutional; and (5) insufficient evidence was adduced at trial to support the first degree murder conviction.[1]

## II. DISCUSSION

■ A federal court may not address the merits of a habeas petition unless the state courts first have a full and fair opportunity to review the claims. *Farrell v. Lane*, 939 F.2d 409, 410 (7th Cir.1991). This threshold requirement is satisfied if the petitioner: (1) exhausts all available state remedies; and (2) raises all claims in the habeas petition throughout the course of the state proceedings. *Momient–El v. DeTella*, 118 F.3d 535, 538–41 (7th Cir.1997). If a petitioner fails to satisfy either of these requirements, the petition is barred. *Id.*

■ A petitioner exhausts his state remedies by presenting his claims to the highest state court for a ruling on the merits, *id.* at 538, or "when the claims could not be brought in state court because no remedies remain available at the time the federal petition is filed." *Farrell*, 939 F.2d at 410 (citations omitted). In the instant case, the record indicates, and Respondent concedes, that Petitioner exhausted his state remedies. Thus, the court looks to the second obstacle barring substantive review.

■ Procedural default occurs when: (1) a petition to the federal court includes new claims that the petitioner failed to raise at the state level, *see Momient–El*, 118 F.3d at 540–41; or (2) the state court declined to address a claim because the petitioner failed to comply with a state procedural requirement, *see Coleman v. Thompson*, 501 U.S. 722, 729–30, 111 S.Ct. 2546, 2553–54, 115 L.Ed.2d 640 (1991). In this case, Respon-

dent asserts that two of Petitioner's five claims are subject to procedural default.

### A. *Procedural Default*

#### 1. *Right to Present Evidence*

■ Respondent argues that Petitioner's claim, allegedly being denied the right to present evidence, was never raised in the state proceedings. Petitioner's argument regarding this issue consists of the following two paragraphs:

The defendant was denied his constitutionally guaranteed right to present evidence and testimony in [sic] his own behalf when the court barred such presentation.

Although the statute charging the defendant requires the defendant to come forward with evidence in mitigation, in order to remove the facts from the realm of first degree murder to that of second degree, the Trial Court barred the defendant from going forward with the evidence.

Construing Petitioner's pro-se petition liberally, *see Antonelli v. Sheahan*, 81 F.3d 1422, 1427 (7th Cir.1996), it appears that his claim is a summary recitation of an earlier argument raised in the state courts. There, Petitioner contended that the trial court erred when it precluded him from testifying about possible adverse DCFS action taken against him. Petitioner feared that if the DCFS knew that Gilbert was selling drugs outside Petitioner's home, it could jeopardize his status with the DCFS. Petitioner argues that this evidence, had it been admitted, was sufficient to reduce Petitioner's conviction to second degree murder.

However, the Illinois appellate court refused to address this issue, concluding that the claim was not properly preserved for direct appeal. Indeed, the record indicates that Petitioner did not lodge an objection during trial, and no post-trial motion contained such an objection. *People v. Medley*, No. 1–93–0594, at *2 (Ill.App.Ct. 1st Dist. March 25, 1996). Thus, relying on *People v. Enoch*, 122 Ill.2d 176, 119 Ill.Dec. 265, 270, 522 N.E.2d 1124, 1129 (1988) and *People v.*

---

**1.** The court notes that Petitioner's writ application actually contains seven enumerated claims. However, two of the claims, sufficiency of the

evidence and the right to present mitigating evidence, are duplicitous.

*Brown,* 104 Ill.App.3d 1110, 60 Ill.Dec. 843, 850, 433 N.E.2d 1081, 1088 (1982), the state appellate court concluded that Petitioner's claim was procedurally defaulted pursuant to the waiver doctrine.

▪ Generally, federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman,* 501 U.S. at 729, 111 S.Ct. at 2553. It is well settled that a failure to object at trial or in a post-trial motion "constitutes an independent and adequate state ground and [federal courts] will not entertain that claim." *Aliwoli v. Gilmore,* 127 F.3d 632, 634 (7th Cir.1997); *Lewis v. Casey,* 518 U.S. 343, —— n. 2, 116 S.Ct. 2174, 2181 n. 2, 135 L.Ed.2d 606 (1996). Thus, the court need not consider Petitioner's claim. *Ylst v. Nunnemaker,* 501 U.S. 797, 800, 111 S.Ct. 2590, 2592, 115 L.Ed.2d 706 (1991) ("When a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court.") However, even where independent and adequate state grounds exist, petitioners may still avail themselves of substantive habeas review if they can demonstrate "cause and prejudice" for the procedural default. *Gray v. Netherland,* 518 U.S. 152, —— – ——, 116 S.Ct. 2074, 2080–81, 135 L.Ed.2d 457 (1996).

▪ In this case, Petitioner fails to demonstrate good cause for not preserving his objection at trial. In addition, Petitioner does not articulate what prejudice resulted from the default. The absence of any allegations showing cause and prejudice demonstrate that Petitioner had no basis to object in the first place. *Dugger v. Adams,* 489 U.S. 401, 408, 109 S.Ct. 1211, 1215, 103 L.Ed.2d 435 (1989) (finding an absence of good cause where petitioner offered no explanation for failure to object at trial or in post-trial motion). Further, as the Illinois appellate court noted in dicta, what DCFS may have done had it known that Gilbert was selling drugs outside Petitioner's home "could only be speculative, as there was no evidence of any DCFS policy which would support [Petitioner's] contention." In short, even if Petitioner had properly preserved his objection, the claim lacked merit. *Id.* (declining to find good cause and prejudice where outcome would have been the same if objection were properly preserved). Therefore, the court concludes that Petitioner's claim lacks merit.

### 2. *Ineffective Assistance of Counsel*

In his petition for post-conviction relief, Petitioner claimed ineffective assistance of counsel. His claim before the Illinois appellate court consisted of the following sentence: "That the petitioner was denied his constitutional right to a fair and impartial trial when his attorney failed to adequately and competently represent in [sic] this cause of action." The Illinois appellate court, citing *People v. Lawrence,* 211 Ill.App.3d 135, 138, 155 Ill. Dec. 564, 569 N.E.2d 1175 (1991), declined to address this claim on the grounds that it was "insufficient to warrant further proceedings."

In order to properly preserve a claim for federal habeas review under § 2254, petitioners must present their federal claims in a manner which allows the state courts a full and fair opportunity to rule on the issues. *Verdin v. O'Leary,* 972 F.2d 1467, 1473 (7th Cir.1992). Petitioners provide state courts with such an opportunity when their claims

(1) rely on pertinent federal cases employing constitutional analysis; (2) rely on state cases applying constitutional analysis to a similar factual situation; (3) assert the claim in terms so particular as to call to mind a specific constitutional right; or (4) allege a pattern of facts that is well within the mainstream of constitutional litigation. If none of the four factors is present and the state has not otherwise signalled its satisfaction with the presentment of the federal claim, then this court will not consider the state courts to have had a fair opportunity to consider the claim.

*Moleterno v. Nelson,* 114 F.3d 629, 634 (7th Cir.1997).

▪ Here, Petitioner fails to offer anything more than the customary boilerplate language invoking the familiar ineffective assistance argument. There is no citation to federal or state cases, much less an analysis of their respective holdings. Similarly, there is no discussion of the relevant facts giving rise to the ineffective assistance claim. Although Petitioner's habeas petition contains

facts allegedly demonstrating ineffective assistance, these allegations were never before the state courts. It is axiomatic that before a federal court may entertain federal constitutional issues, state courts must first have a fair opportunity to review the claim. *Id.; Farrell,* 939 F.2d at 410. Accordingly, Petitioner's claim of ineffective assistance of counsel is procedurally defaulted.

However, even if the court considered the merits of Petitioner's claim, it still lacks merit. Petitioner identifies three instances where his trial counsel was allegedly ineffective: (1) preparing for trial, (2) cross-examining witnesses, and (3) encouraging Petitioner to waive a jury trial in favor of a bench trial. As discussed below, these alleged errors do not affect nor diminish the overwhelming evidence of guilt.

To establish a claim for ineffective assistance of counsel, a petitioner must prove that: (1) his attorney's performance fell below an objective standard of reasonableness; and (2) the attorney's deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The petitioner "bears a heavy burden when seeking to establish an ineffective assistance of counsel claim." *Jones v. Page,* 76 F.3d 831, 840 (7th Cir.1996) (*quoting Drake v. Clark,* 14 F.3d 351, 355 (7th Cir.1994)).

To satisfy the first prong of the *Strickland* test, the performance element, a defendant must identify the acts or omissions of counsel that form the basis of his ineffective assistance claim. *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2065. The review of a counsel's performance is highly deferential, presuming reasonable judgment and declining to second-guess strategic choices. *Id.* at 689, 104 S.Ct. at 2065; *United States v. Williams,* 106 F.3d 1362, 1367 (7th Cir.1997) (citing cases). With regard to the second prong, the prejudice element, "the defendant must show that there is a probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. Because a Petitioner must establish both the performance and prejudice elements of *Strickland,* courts are excused from examin-

ing each prong when one cannot be satisfied. *Milone v. Camp,* 22 F.3d 693, 701 (7th Cir. 1994).

 Assuming arguendo, that trial counsel's performance fell below an objective standard of reasonableness, Petitioner fails to demonstrate that the outcome would have been different but for trial counsel's deficiencies. First, Adams observed Petitioner initiate an argument with Gilbert, pull a knife, and stab him. Second, although Brown did not actually see Petitioner stab the decedent, she did observe Petitioner initiate an argument with Gilbert, chase him with the knife, and return to the area with a bloody knife. Finally, Petitioner admitted that he stabbed Gilbert. Thus, the question before the trier of fact was whether Petitioner acted out of anger or self-defense. Because the trial court found Petitioner guilty of first degree murder, it necessarily rejected Petitioner's testimony. This court will not second guess the state trial court on issues of witness credibility. *Stone v. Farley,* 86 F.3d 712, 718 (7th Cir.1996) ("Federal courts do not reevaluate the credibility of witnesses when conducting habeas review of state trials.") Therefore, Petitioner's claim of ineffective assistance of counsel lacks merit.

Before addressing the substance of the remaining claims, the court notes as a preliminary matter that Petitioner's petition is reviewed under the stricter habeas standards promulgated in the Antiterrorism & Effective Death Penalty Act of 1996, Pub.L. 104–132, 110 Stat. 1219 (1996) ("AEDPA").[2] The recently amended § 2254(d) of the AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

**2.** The AEDPA was enacted April 24, 1996. Peti- tioner's petition was filed February 24, 1997.

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

The "contrary to" clause of § 2254(d)(1) applies solely to questions of law. *Lindh v. Murphy*, 96 F.3d 856, 869 (7th Cir.1996), *rev'd on other grounds,* —— U.S. ——, 117 S.Ct. 726, 136 L.Ed.2d 643 (1997). It requires federal courts "to give state courts' opinions a respectful reading, and to listen carefully to their conclusions, but when the state court addresses a legal question, it is the law as determined by the Supreme Court of the United States' that prevails." *Id.* In contrast, the "unreasonable application" clause of § 2254(d)(1) applies to mixed questions of law and fact. *Id.* at 870. It "restricts the grant of collateral relief to cases in which the state's decision reflects 'an unreasonable application of' the law" to the facts. *Id.* With these principles in mind, the court turns to the merits of Petitioner's remaining claims.

### B. *Merits*

#### 1. *Improper Impeachment of Petitioner on Cross-examination*

■ Petitioner alleges that his rights to "due process and confrontation"[3] were violated when the prosecutor attempted to impeach Petitioner's self-defense testimony without subsequently perfecting the impeachment. Petitioner claims that once he admitted that he could not recall telling O'Grady about the pipe in his first interview, the state subsequently should have presented evidence showing that Petitioner actually lied about the pipe. However, Petitioner argues that the state's failure to prove-up this accusation left the trial court with the false impression that Petitioner was indeed fabricating the story. The court concludes that this argument lacks merit.

In *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), two defendants asserted their Miranda rights and made no post-arrest statements regarding their involvement in the charged conspiracy. On direct examination, both defendants claimed they were framed. On cross-examination, the state asked why the defendants failed to tell their stories at the time of arrest. The Supreme Court reversed the defendants' convictions because "the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving Miranda warnings, violated the Due Process Clause of the Fourteenth Amendment." *Id.* at 619, 96 S.Ct. at 2245.

In *Anderson v. Charles*, 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980), the Supreme Court revisited this issue, but held that questioning a defendant's failure to tell consistent stories after a waiver of Miranda is not a due process violation. "Such questioning makes no unfair use of silence because a defendant who voluntarily speaks after receiving Miranda warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all." *Id.* at 408, 100 S.Ct. at 2182.

Here, the appellate record indicates that Petitioner's direct examination testimony was inconsistent with his initial post-arrest statements given to O'Grady. O'Grady testified that Petitioner never mentioned to him that the decedent had a pipe. Thus, when Petitioner testified, the prosecutor was entitled, if not, duty bound, to probe Petitioner about his inconsistent stories. Furthermore, there was no need to perfect the impeachment because O'Grady already testified to Petitioner's inconsistent stories. Therefore, the Illinois appellate court's decision is not contrary to established federal law under *Doyle* or *Anderson.* 28 U.S.C. § 2254(d)(1).

#### 2. *Constitutionality of the Illinois First Degree Murder Statute*

■ Petitioner contends that the Illinois murder statute under which he was convicted, 720 ILCS § 5/9–1, is unconstitutional because it "requires him to come forward with evidence in mitigation, to remove the facts from the realm of first degree murder to that of second degree murder." In essence, Peti-

---

**3.** Petitioner's entire habeas petition is devoid of any citations to authority, state, federal, or otherwise. Although Petitioner's petition is not a "model of legal draftsmanship," the court is able to identify the core of Petitioner's claims. *Coulter v. Gramley*, 93 F.3d 394, 397 (7th Cir.1996).

tioner argues that the statute requires the defense to disprove an element of first degree murder by presenting mitigating evidence consistent with second degree murder. As a result, Petitioner concludes that this burden shifting offends due process.

The Illinois Supreme Court has addressed this issue on more than one occasion, and each time the statute has withstood scrutiny. *See People v. Young,* 248 Ill.App.3d 491, 188 Ill.Dec. 456, 471–72, 618 N.E.2d 1026, 1041–42 (1993) (collecting cases). Similarly, the burden shifting argument was found unpersuasive on collateral attack in the United States Court of Appeals for the Seventh Circuit. In *Mason v. Gramley,* 9 F.3d 1345, 1351 (7th Cir.1993), *overruled on other grounds, Hogan v. McBride,* 74 F.3d 144 (7th Cir.1996), the court stated:

> The Illinois statute requires the State to prove all elements of first degree murder beyond a reasonable doubt, and it only shifts to the defendant the burden of establishing an affirmative defense once the State has met its initial burden. Moreover, in proving a mitigating factor, a defendant in Illinois is not required to disprove an essential element of first degree murder. Under the statute, proof of a mitigating factor does not act to negate the mental state required for first degree murder. The Illinois statute thus resembles that approved by the [United States Supreme] Court in [*Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977)] . . . .

(Citations omitted.)

In this case, Petitioner fails to distinguish his arguments or facts from established federal law. Specifically, the petition does not allege that the first degree murder statute runs contrary to *Patterson.* In short, there is nothing in the petition which justifies revisiting the progeny of state and federal case law upholding the constitutionality of 720 ILCS § 5/9–1. Therefore, the court concludes that the statute is consistent with due process.

### 3. *Sufficiency of the Evidence*

■ Although Petitioner's argument of insufficient evidence meanders into other issues, when distilled, Petitioner's claim rests on the mere allegation that there was "unre-butted evidence of self-defense ." This lone assertion, Petitioner argues, demonstrates that insufficient evidence was adduced at trial to support a first degree murder conviction. The court disagrees.

A federal court sitting in collateral review of a state conviction addresses sufficiency of the evidence claims under the standard established in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319, 99 S.Ct. at 2788. In light of the AEDPA amendments, the Seventh Circuit has recently defined the scope of evidence sufficiency inquiries.

> Because Jackson claims are mixed questions of law and fact, we are compelled to hold that a writ of habeas corpus may be issued for evidence insufficiency only if the state courts have unreasonably applied the Jackson standard. Federal review of these claims therefore now turns on whether the state court provided fair process and engaged in reasoned, good-faith decisionmaking when applying Jackson's "no rational trier of fact" test.

*Gomez v. Acevedo,* 106 F.3d 192, 199 (7th Cir.1997).

The Illinois appellate court noted that eye-witness testimony was elicited showing that Petitioner "initiated an argument with the victim and that the victim had turned and started to walk away when [Petitioner] stabbed him repeatedly in the back." From this evidence, the court stated that "a rational trier of fact could have concluded that there was no serious provocation or sudden and intense passion" which would justify a reduction to second degree murder. Therefore, the appellate court concluded that sufficient evidence existed to support the first degree murder conviction and affirmed.

A review of the appellate opinion indicates that the court accurately recited and applied the *Jackson* standard. Additionally, the state court demonstrated a familiarity with the trial evidence surrounding the killing. It properly noted eye-witness testimony identi-

fying Petitioner as the attacker, while discounting Petitioner's version of the events. Indeed, the appellate court referenced testimony which directly refuted Petitioner's claim of unrebutted self-defense evidence. Thus, the court concludes that the Illinois appellate court did not act unreasonably in its application of the *Jackson* standard and trutinated all factors before deciding.

### III. CONCLUSION

For the foregoing reasons, Petitioner's petition for a writ of habeas corpus is denied.

IT IS SO ORDERED.