THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JOHN LIBERG, Defendant-Appellant.

Second District   No. 84—0804

Opinion filed December 10, 1985.

Barry A. Spevack and Michael D. Monico, both of Monico & Pavich, of Chicago, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Phyllis J. Perko and Cynthia N. Schneider, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE LINDBERG delivered the opinion of the court:

Defendant was convicted of attempt (murder) (two counts), armed violence (two counts), residential burglary, aggravated battery and unlawful use of weapons. He was sentenced to concurrent terms of eight years' imprisonment for each count of attempt (murder), each count of armed violence, and residential burglary; five years for aggravated battery; and 364 days for unlawful use of weapons. Defendant has appealed contending that the jury should have been informed of the consequences of a verdict of not guilty by reason of insanity during *voir dire* or in an instruction; the evidence was insufficient to prove his sanity beyond a reasonable doubt; lay witnesses were improperly permitted to give their opinions of defendant's sanity when an adequate foundation had not been laid; the prosecutor improperly implied defendant's insanity defense was concocted; and certain statements made by defendant should have been suppressed because the police obtained them by violating defendant's rights under the fourth and fifth amendments to the United States Constitution. We affirm.

Initially we will address defendant's contention that the State failed to prove beyond a reasonable doubt that he was sane at the time of the March 15, 1983, incident. Defendant's psychiatrist, Dr. Marvin Ziporyn, testified that defendant suffered from a major depressive episode and could not conform his conduct to the requirements of the law on that date. The State's psychiatrist, Dr. Jonathan Kelly, initially diagnosed defendant as suffering from a major depression, changed his opinion subsequently on the basis of additional information, and at trial testified that in his opinion defendant could conform his conduct to the requirements of the law on March 15, 1983. Defendant's psychologist, Dr. Martin Scripp, diagnosed defendant's condition as a dythymic reac-

tion or depression and was of the opinion defendant could not conform his conduct to the requirements of the law on March 15, 1983. The State's psychologist, Dr. Eileen Thatcher, diagnosed defendant primarily as a malingerer and was of the opinion he could conform his conduct to the requirements of the law on March 15, 1983. In addition, three lay witnesses were of the opinion defendant could conform his conduct to the requirements of the law.

■ Defendant argues that Dr. Kelly's testimony was insufficient to establish defendant's sanity because Dr. Kelly had initially diagnosed a mental disorder but had subsequently changed his mind. It is significant that at no point did Dr. Kelly ever testify that he had at any time been of the opinion defendant was not sane on March 15, 1983. Defendant also argues Dr. Thatcher's testimony could not be believed because her diagnosis differed from that of the other three experts and because she testified there is no way to measure a person's mental condition in the past using psychological tests. Such conflicts were for the jury to consider. (*People v. Grice* (1984), 121 Ill. App. 3d 567, 568-69, 459 N.E.2d 1122, 1123-24.) The evidence presented by the State was, if believed by the jury, sufficient to establish defendant's sanity beyond a reasonable doubt. Therefore, the jury's determination that defendant was sane must be upheld. *People v. Newbury* (1972), 53 Ill. 2d 228, 236.

Defendant also contends the jury, during *voir dire* and in an instruction, should have been informed that a verdict of not guilty by reason of insanity would result in commitment proceedings being brought against him. Whether this information should have been given during *voir dire* or in an instruction will be considered separately, because each context involves different considerations.

■ Defendant argues that the jury should have been educated during *voir dire* as to the consequences of a verdict of not guilty by reason of insanity. However, the law is clearly contrary to defendant's position. The only legitimate purpose of *voir dire* is to assure the selection of an impartial jury, a purpose which does not include preeducation of the jury. (*People v. Teague* (1982), 108 Ill. App. 3d 891, 894, 439 N.E.2d 1066, 1068-69. See 87 Ill. 2d R. 431; 94 Ill. 2d R. 234.) The trial court permitted the prospective jurors to be examined with respect to any biases they might have against the insanity defense, which was all that was necessary and all that was proper to assure the selection of a jury which was impartial on the issue of defendant's sanity. *People v. Pitts* (1982), 104 Ill. App. 3d 451, 457, 432 N.E.2d 1062, 1067.

■ The other aspect of defendant's argument that the jury should have been informed that a verdict of not guilty by reason of insanity

would result in commitment proceedings against defendant is his contention that the jury should have been instructed to this effect. However, trial defense counsel never submitted such an instruction on defendant's behalf. A trial court has no obligation to instruct a jury on its own motion except on such subjects as the elements of the offense charged, the presumption of innocence and the State's burden of proof. (*People v. Parks* (1976), 65 Ill. 2d 132, 137, 357 N.E.2d 487, 489.) Because the instruction defendant claims should have been given was not requested at the jury instructions conference or submitted to the trial court, and because its subject matter did not fall within these matters, a trial court is required to instruct, on *sua sponte* if necessary, the issue raised has been waived.

■ Defendant argues that trial counsel's failure to submit the instruction regarding the consequences of a verdict of not guilty by reason of insanity was ineffective assistance of counsel. To prevail on this claim, defendant must establish that (1) trial counsel's representation "fell below an objective standard of reasonableness" and (2) there is a reasonable probability—a probability which is sufficient to undermine confidence in the outcome but which need not be proof by a preponderance of the evidence—that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland v. Washington* (1984), 466 U.S. 668, 688, 694, 80 L. Ed. 2d 674, 693, 698, 104 S. Ct. 2052, 2065, 2068; *People v. Albanese* (1984), 104 Ill. 2d 504, 525-27.) We dispose of this issue on the ground of lack of sufficient prejudice. *Strickland v. Washington* (1984), 466 U.S. 668, 697, 80 L. Ed. 2d 674, 699, 104 S. Ct. 2052, 2070.

The error defendant alleges trial counsel made was not requesting that the jury be instructed on the consequences of a verdict of not guilty by reason of insanity. Defendant asserts that, without such an instruction, a jury may erroneously believe a defendant found not guilty by reason of insanity will be immediately freed and so be reluctant to render such a verdict. This claim has been rejected on several occasions by the Illinois Appellate Court. (See, *e.g., People v. Ford* (1983), 118 Ill. App. 3d 59, 62-63, 454 N.E.2d 1095, 1097; *People v. Parker* (1983), 113 Ill. App. 3d 321, 329, 447 N.E.2d 457, 463; *People v. LaFiura* (1981), 92 Ill. App. 3d 714, 717-19, 415 N.E.2d 1365, 1367-69; *People v. Meeker* (1980), 86 Ill. App. 3d 162, 170-71, 407 N.E.2d 1058, 1065-66.) We believe that the reasoning of such cases as *People v. Meeker* (1980), 86 Ill. App. 3d 162, 407 N.E.2d 1058, remains sound and decline defendant's invitation to change the law of this State on the basis of the reasoning of the cases he cites from other jurisdictions. Thus, if the instruction had been submitted to the trial court it should

have been refused. Consequently, defendant has not established any prejudice as a result of trial defense counsel's alleged error.

Defendant also contends that his convictions should be reversed because the trial court allowed three lay witnesses to testify as to their opinions of defendant's sanity. It has long been held that:

"[A] nonexpert witness who had an opportunity to observe the subject under inquiry may give his opinion as to his mental condition—at the same time stating the facts and circumstances as the basis for the opinion." (*People v. Pruszewski* (1953), 414 Ill. 409, 413, 111 N.E.2d 313, 315; accord, *People v. Patlak* (1936), 363 Ill. 40, 1 N.E.2d 228; and *People v. Dunigan* (1981), 96 Ill. App. 3d 799, 421 N.E.2d 1319.)

Whether the witness has testified to sufficient facts and circumstances is a matter within the trial court's discretion, and the trial court's decision in this regard will not be reversed unless it is shown that the court abused its discretion. *People v. Kuntz* (1977), 52 Ill. App. 3d 804, 368 N.E.2d 114.

The three witnesses whose testimony is at issue were Darlene Baldwin and Officers David Day and Lance Oakland. Darlene Baldwin had dated defendant for a year but had broken up with him four to five months before March 15, 1983. She had seen defendant three or four times in that four or five months, the last being February 26, 1983. On March 15, 1983, she spoke with defendant on the telephone but did not see him. Officers Day and Oakland saw defendant after the incident of March 15, 1983. Officer Oakland transported defendant to the police station but did not speak to him. Officer Day had a conversation with him. All three witnesses testified that, in their opinions, defendant could conform his conduct to the requirements of the law on March 15, 1983.

Each of the three witnesses had an opportunity to observe defendant and the facts and circumstances regarding their observation of and acquaintance with defendant were presented to the jury. That each witness' opportunity to observe defendant may have had certain limitations—that Darlene Baldwin had not seen defendant on a regular basis for a time and only talked with him on the telephone on March 15, 1983; that Officers Oakland and Day did not know defendant previously; and that Officer Oakland never spoke with defendant—was certainly something for the jury to consider in deciding how much weight to give to the witnesses' opinions. However, the trial court did not abuse its discretion in allowing the witnesses to give their opinions as to defendant's sanity.

Defendant also contends that the State improperly suggested

during its examination of certain witnesses and closing arguments that defendant had concocted his insanity defense. However, where there is evidence to support it, a prosecutor may properly argue that a defendant has concocted a mental disease or defect and is "attempting to use it to avoid responsibility for his crimes." (*People v. Gacy* (1984), 103 Ill. 2d 1, 83.) Dr. Thatcher testified that in her opinion defendant was malingering, that is, exaggerating his symptoms. Moreover, testimony from witnesses who knew defendant could have supported an inference that his condition was improving in the period immediately preceding March 15, 1983. There was therefore evidence to support the State's theory that defendant had manufactured his symptoms in order to raise an insanity defense.

■ Defendant finds particularly egregious the State's mention of the title of a book coauthored by defense psychiatrist Dr. Ziporyn which included the name "Richard Speck." This question was not objected to when asked so this portion of defendant's issue has been waived. Even if it had not been, permitting the question would not have been erroneous. Defense counsel had elicited the fact that Dr. Ziporyn had authored a book during direct examination while qualifying him as an expert. The State added the information about the title, however that was not dwelt upon. The thrust of the State's cross-examination on the book was to establish that Dr. Ziporyn was a determinist, a fact relevant to the jury's determination of the weight to be accorded Dr. Ziporyn's opinion that defendant could not conform his conduct to the requirements of the law on March 15, 1983. Therefore, there was no error in the State's suggestions that defendant had manufactured his symptoms or in the mention of the title of Dr. Ziporyn's book.

Defendant's final contentions are that his fourth and fifth amendment rights were violated when the police overheard him make certain statements during telephone calls he made from the police station after he was arrested. He maintains those statements, and subsequent statements he argues were obtained as fruits of the illegally overheard statements, must be suppressed.

While defendant was being held after his arrest, he was permitted to make telephone calls from the police station. The procedure was for defendant, who was in a cell, to tell a police officer the number to be dialed. The officer would dial the number and hand the telephone receiver to defendant in the cell. Police officers were nearby and in plain view of defendant during the calls, and portions of his calls were overheard. Defendant also notes that the police officer who dialed memorized the numbers dialed and attempted to learn the identity of the

person defendant called, and that the police officer searched defendant's wallet before giving it to defendant who wanted to obtain telephone numbers it contained.

■ The police officers who overheard defendant were visible to him. Moreover, defendant knew that he was making his calls from a police station telephone while in a cell, and not from an area affording him any privacy. Under these circumstances, defendant could have no reasonable expectation of privacy in the statements he made during his telephone calls and, therefore, the police committed no violation of defendant's fourth amendment rights by overhearing those statements. *Katz v. United States* (1967), 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507; *People v. Myles* (1978), 62 Ill. App. 3d 931, 936, 379 N.E.2d 897, 900; *People v. Griffin* (1974), 23 Ill. App. 3d 461, 465, 318 N.E.2d 671, 675.

■ Defendant's fifth amendment claim is that the statements were illegally obtained because he was not given *Miranda* warnings before he made them. (*Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602.) However, defendant's statements on the telephone were not elicited by any police interrogation and *Miranda,* therefore, is inapplicable. (*People v. Griffin* (1974), 23 Ill. App. 3d 461, 465, 318 N.E.2d 671, 675.) Defendant argues that the police actions were "reasonably likely to evoke an incriminating response" from defendant and therefore constituted interrogation. (*Rhode Island v. Innis* (1980), 446 U.S. 291, 301, 64 L. Ed. 2d 297, 308, 100 S. Ct. 1682, 1690.) We disagree. By making it clear to defendant that police department personnel were within earshot of the telephone, and by having defendant make the calls in an obviously nonprivate setting and by their other actions, the police did nothing "reasonably likely to elicit an incriminating response" from defendant. The reasonably likely response from a person in defendant's position would be to make telephone calls to (1) inform friends or family he had been arrested, (2) retain an attorney, and/or (3) arrange for the posting of bail. That defendant went further and made statements about the offenses was not reasonably likely to result from the actions of the police, so those statements were not elicited by police interrogation.

The judgment of the circuit court of Du Page County is accordingly affirmed.

Affirmed.

REINHARD and SCHNAKE, JJ., concur.