FIRST DIVISION
October 23, 2006

No. 1-04-1939

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| | ) | the Circuit Court |
| Plaintiff-Appellee, | ) | of Cook County |
| | ) | |
| v. | ) | No. 79 CR 7021 |
| | ) | |
| JAMES FORD, | ) | Honorable |
| | ) | Clayton J. Crane, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE CAHILL delivered the opinion of the court

We review the denial of a petition for postconviction relief in an appeal with a few expected and a few unexpected arguments. Expected is a claim of ineffective assistance of trial counsel. Unexpected is an admission by distinguished trial counsel that he was, in fact, ineffective. Unexpected as well is a group of lawyers who testified that trial counsel was suffering from emotional fatigue as a result of an earlier trial, which may have contributed to his ineffectiveness. So we have a new wrinkle in the expanding web of ineffective assistance claims: missteps brought about by the stress of the job. The trial judge in response to this chorus of claimed ineffectiveness, and after a traversal of the trial record, found that trial counsel turned in a "stellar performance." Our review of the record leads us to concur with the trial judge. Trial

counsel has been much too hard on himself.  We affirm.

On appeal, defendant claims the evidence at the postconviction hearing showed that his constitutional rights were violated; first, because the trial judge forced his trial to begin without adequate preparation by his attorney, and second, because his trial and appellate attorneys rendered ineffective assistance.

Defendant was charged with the murder and armed robbery on a subway of Joseph Ardell on October 24, 1979.  Randolph Stone was appointed to represent defendant.  Stone filed his appearance and began filing motions on defendant's behalf in November 1979.  On January 3, 1980, Gerson Kaplan, a staff psychiatrist for Cook County, examined defendant, found him fit to stand trial and determined he was "legally sane" at the time of the alleged offenses.  On June 27, 1980, the trial judge set defendant's trial for August 18, 1980.  Because of attorney Stone's involvement in the Pontiac prison riot case, a capital murder case, defendant's trial was delayed. Judge Cousins, the trial judge, set a new trial date of July 13, 1981, and advised Stone that if the Pontiac case ended earlier, defendant's trial would be advanced.  The Pontiac trial ended on May 8, 1981.  On May 15, 1981, Stone received notice that the State had asked to advance defendant's trial date to May 26, 1981.  Stone moved for a continuance, arguing that he was not adequately prepared for trial.  Judge Cousins denied the motion and jury selection began on May 28, 1981.

The details of the trial and the evidence presented appear in this court's opinion, People v. Ford, 118 Ill. App. 3d 59, 60, 454 N.E.2d 1095 (1983).  We will recount only those portions of the trial record that apply to this appeal.

Defendant presented two witnesses at trial. Dr. Bobby Wright, a psychologist qualified as an expert witness, testified that defendant suffered from chronic alcoholism. He said that in his "professional opinion there [was] reasonable doubt as to whether [defendant] possess[ed] substantial capacity to appreciate the criminality of his conduct or to conform his behavior to the requirements of the law." Dr. Wright testified on cross-examination that he first examined defendant on May 29 and 30, 1981, after jury selection for defendant's trial had started. Geraldine Galvin testified that she had a 10-year relationship with defendant, who was the father of her child. She said he became loud and violent and "just out of hand" when he drank. She said that after drinking, he would not remember what had happened.

Defendant was convicted and sentenced to life imprisonment for first degree murder with a concurrent 60-year term for armed robbery.

Defendant appealed. Appellate counsel (not Stone) raised two issues: (1) that the trial court erred in failing to instruct the jury that a verdict of not guilty by reason of insanity could subject defendant to involuntary commitment; and (2) the trial court erred in denying his motion for a mistrial despite prosecutorial misconduct. Ford, 118 Ill. App. 3d at 60. We note in passing that appellate counsel on direct appeal found nothing in Mr. Stone's performance to warrant an ineffective assistance of counsel claim. The appellate court affirmed defendant's convictions and sentences. Ford, 118 Ill. App. 3d at 60.

In November 1990, defendant filed a *pro se* petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122 (West 1996)). In 1995, the State filed a motion to dismiss. Appointed counsel from the Cook County Public Defender's office filed a supplemental petition

3

in February 2001. Defendant claimed to have suffered violations of his constitutional rights when: (1) the trial court denied his request for a continuance; (2) trial counsel failed to arrange psychological and psychiatric examinations before jury selection; (3) the prosecutor excluded minority jurors; (4) the prosecutor made improper opening and closing remarks; (5) counsel failed to represent him at sentencing; (6) appellate counsel was ineffective for failing to raise meritorious issues; and (7) his sentence violated Apprendi v. New Jersey, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S.Ct. 2348 (2000).

Attached to the petition was the affidavit of Stone. Stone averred that he knew defendant's sanity was a key issue in the trial, but he, Stone, failed to arrange for an adequate psychological and psychiatric examination before the trial began. Stone said he had wanted to have defendant tested by Dr. Carl Mellinger, a psychiatrist, but Dr. Mellinger was unavailable. This error, he claimed, destroyed any possibility of an insanity finding. Stone claimed that both he and the trial judge erred in failing to obtain a fitness hearing when evidence emerged at trial that defendant had received psychotropic medications while in jail. Stone said that he had not been prepared for sentencing and he believed defendant would have received a lighter sentence if he, Stone, had been better prepared.

The State filed a motion to dismiss the postconviction petition. The court denied the State's motion and ordered an evidentiary hearing. It was held on November 25, 2003, and February 26, 2004.

Stone, then a clinical professor of law at the University of Chicago Law School, testified that he was appointed as counsel for defendant in 1979. But by late 1979 and for all of 1980, he

was involved in the Pontiac case. He said the Pontiac case left him "physically and emotionally exhausted." He said the advancement of defendant's trial left him inadequately prepared. He said he arranged for Dr. Bobby Wright, a psychologist, to examine defendant while jury selection was underway, but Wright did not have enough time to evaluate defendant and to prepare for trial. Stone said he tried to arrange an examination with a psychiatrist, Dr. Mellinger, but was unable to do so. Stone said he believed that if he had secured the testimony of both Dr. Wright and Dr. Mellinger, the jury could have found defendant not guilty by reason of insanity.

On cross-examination, Stone admitted that when he sought a continuance, defendant's case was one of the older cases on the judge's docket. He admitted that before the Pontiac trial and even before his official appointment as defendant's attorney, he worked on defendant's case by meeting with defendant and filing several motions. Stone acknowledged that defendant was examined by Dr. Kaplan, a psychiatrist, on January 3, 1980, and found fit to stand trial.

David Thomas, a clinical professor at Chicago-Kent College of Law, testified that he represented defendants in the Pontiac case, a multiple-defendant, multiple-murder prosecution, from November 1980 until May 1981. He said when the trial ended, Stone was physically and emotionally exhausted and "completely washed out." Thomas admitted on cross-examination he was not involved in defendant's trial and did not read the transcript. Stanley L. Hill testified that he was an attorney on the Pontiac case. He said the case was "all consuming" and Stone was involved in all phases. He said he believed certain aspects of Stone's performance at defendant's trial should have been raised by appellate counsel. He admitted on cross-

5

examination he had no knowledge of defendant's case. Thomas Breen, a prosecutor in the Pontiac trial, testified that the trial was one of the most complicated he had ever seen. Breen said Stone actively participated in the pretrial motions, jury selection and trial. Breen admitted on cross-examination he had no knowledge of defendant's case. Attorney Michael Deutsch testified that he saw Stone on the day the Pontiac trial ended and Stone looked very tired and "basically just wasted" from the trial. Deutsch admitted he had no personal knowledge of defendant's trial.

The parties stipulated to the testimony of Judge Leo Holt, a defense attorney in the Pontiac case. If called as a witness Judge Holt would have testified that Stone actively participated in the Pontiac case and the trial was a "horrendous experience." The defense also presented an affidavit from Judge Marianne Jackson, another defense attorney in the Pontiac trial. Judge Jackson said she saw Stone on May 9, 1981, and he looked "emotionally, physically and mentally drained." She said she "would not have been able to start picking a jury in a capital trial on May 27, 1981."

The State presented no witnesses. On June 14, 2004, the trial court denied defendant's postconviction petition in a written order. It is from that order defendant now appeals.

We use a deferential standard in reviewing a trial court's decision after an evidentiary hearing on a postconviction petition, reversing only if the decision was manifestly erroneous. People v. Chatman, 357 Ill. App. 3d 695, 698, 830 N.E.2d 21 (2005). "A decision is manifestly erroneous only if it contains error that is 'clearly evident, plain, and indisputable.' " People v. Frieberg, 305 Ill. App. 3d 840, 847, 713 N.E.2d 210 (1999), quoting People v. Ruiz, 177 Ill. 2d

368, 384-85, 686 N.E.2d 574 (1997).

Defendant first claims he was denied a fair trial when his motion for a continuance was denied and the date of his trial was advanced over his objection. He argues the continuance was justified because his attorney professed to being unprepared and, as a result, counsel had not secured Dr. Mellinger as an expert witness to support his theory that defendant was not guilty by reason of insanity. The State argues that a continuance was not justified, given the extended length of time that the case was on the court's docket and the court's repeated warnings that the case would be advanced immediately after the completion of the Pontiac trial.

In its written order, the postconviction court stated:

"The trial date of the case was pushed up 6 weeks. The defense attorney had notice of this possibility almost 2 weeks prior to the start of the trial, and, arrangements had been made for Dr. Wright to report prior to the opening statements. Although this is a tight schedule, I find no abuse of discretion where as in this case there are experienced trial attorneys on both sides and an extremely experienced trial judge. As concerns to any prejudice to the petitioner, I point to the facts as enumerated in the trial counsel's ineffective assistance claim ***. There were few avenues of approach in this case. A denial of a continuance did not cause the defendant to be convicted in this case."

The court found People v. Flores, 269 Ill. App. 3d 196, 201-03, 645 N.E.2d 1050 (1995), to be controlling. There, the trial court denied the defendant's motion for a continuance, resulting in his counsel being unprepared. The appellate court concluded the trial court had not

abused its discretion in denying the continuance because, among other things, the case had been set for trial for more than one year, which gave the public defender's office sufficient time to investigate. Flores, 269 Ill. App. 3d at 201. The appellate court also relied on the trial court's finding that the additional information sought would "would not have been likely to yield sufficiently relevant evidence." Flores, 269 Ill. App. 3d at 202. The appellate court also decided that even if the trial court abused its discretion in denying the continuance, it did not prejudice the defendant where the record showed that defense counsel "adequately cross-examined the State's witnesses and otherwise competently conducted the defense." Flores, 269 Ill. App. 3d at 203. The thorough Flores analysis of the issue was amply supported by citations to People v. Ward, 154 Ill. 2d 272, 304, 609 N.E.2d 252 (1992); People v. Hayes, 52 Ill. 2d 170, 174-75, 287 N.E.2d 465, 467 (1972); and People v. Hall, 157 Ill. 2d 324, 337, 626 N.E.2d 131 (1993). Flores, 269 Ill. App. 3d at 203-04. The court in Flores also distinguished United States v. Cronic, 466 U.S. 648, 662, 80 L. Ed. 2d 657, 670, 104 S. Ct. 2039, 2048 (1984) (the denial of a defendant's motion for a continuance may give rise to a presumption of ineffective assistance of counsel). Flores, 269 Ill. App. 3d at 205-06.

We agree with the court's reliance on Flores here. The trial was first set to begin on August 18, 1980. The trial court gave Stone a continuance of nearly one year for the Pontiac case with the understanding that if the Pontiac trial ended sooner, the date would be advanced. This is exactly what happened. Stone had sufficient time to investigate and to contact and schedule an examination with Dr. Mellinger. There was no showing or offer of proof at the postconviction evidentiary hearing that Dr. Mellinger's involvement in the case would have

yielded evidence in support of defendant's insanity defense. To show that the trial court erred in denying Stone's request for a continuance to secure additional witnesses, defendant would have to show he was diligent in seeking the witnesses, that the testimony was material and might have affected the jury's verdict and that he was prejudiced. Ward, 154 Ill. 2d at 307. There was no evidence offered to support these requirements or even hint at what Dr. Mellinger's testimony might have been.

The postconviction court considered the affidavits, exhibits, trial record and the testimony received at the evidentiary hearing. It concluded that although defense counsel was faced with a tight schedule, he had two weeks' notice of the start of the trial. The postconviction court found that both the trial attorneys and the judge had extensive trial experience. Its conclusion that there were few avenues of approach to the case supports the conclusion that less preparation would have been required for this case than for a case with multiple potential defenses. Defendant did not provide affidavits or other evidence from Dr. Mellinger to show that his opinion would have contradicted Dr. Kaplan's opinion. Defendant did not explain how he expected Dr. Mellinger's testimony to support an insanity defense. Other than his conclusory claim that the jury would have been swayed by a psychiatrist's opinion, defendant did not show that Dr. Mellinger's testimony would have been material and would have changed the trial outcome. The assertion that Dr. Mellinger would have testified that defendant was insane at the time of the offense is speculative.

Because defendant cannot show that Dr. Mellinger's testimony would have been favorable to him and would have affected the outcome of his trial, defendant cannot show the

requisite prejudice. See Ward, 154 Ill. 2d at 307. The postconviction court did not err in concluding that defendant received a fair trial despite the trial court's denial of his motion for a continuance and its advancement of the trial over his objection.

In opposition to Flores and Ward, defendant relies solely on People v. Johnson, 11 Ill. App. 3d 395, 401, 296 N.E.2d 763 (1973). In Johnson, the trial court erred in denying the defendant's motion for a continuance when the defendant had "not a single witness to support his defense of insanity." Johnson, 11 Ill. App. 3d at 400. In Johnson, the defendant moved for a continuance because two psychiatrists who would have testified in his behalf were unavailable. Johnson, 11 Ill. App. 3d at 397. Attached to the motion were two "suggested stipulations" from the psychiatrists which gave their opinions that defendant was insane. The trial court allowed the "suggested stipulations" to be introduced as defense exhibits. Johnson, 11 Ill. App. 3d at 397. The appellate court determined that the trial court erred in denying the defendant's motion for a continuance and in allowing the reports of psychiatric examinations, that could not be subject to confrontation and cross-examination by the defendant, to be substituted for sworn testimony. Johnson, 11 Ill. App. 3d at 402. The appellate court found that the defendant was deprived of the opportunity to persuade the trial court of his insanity, the "sole issue upon which he relied for his defense." Johnson, 11 Ill. App. 3d at 401. But see People v. Joyce, 234 Ill. App. 3d 394, 407-08, 599 N.E.2d 547 (1992) (where the defendant had almost two years from the time of his indictment to obtain a psychological evaluation, Johnson did not require a finding that the trial court abused its discretion in denying the defendant's motion for a continuance).

Unlike the defendant in Johnson, defendant here had a fair opportunity to present his

insanity defense. He presented Dr. Wright, an expert witness, who testified that defendant was unable to conform his conduct to the law. Defendant cross-examined Dr. Kaplan, who testified for the State that defendant was sane. Also, the numerous delays and continuances in this case were not factors in Johnson. Johnson does not stand for the proposition that the denial of a defendant's motion for a continuance in a case grounded on an insanity defense constitutes error of constitutional proportions.

Defendant next claims that the postconviction court erred in denying his petition because he received ineffective assistance of counsel at his trial. He claims Stone was unprepared for trial, failed to secure witnesses to support his insanity defense and allowed Dr. Wright to become an easy target for the prosecution in its cross-examination and closing arguments.

The postconviction court concluded that defendant's ineffective assistance claims did not warrant postconviction relief. We quote from the court's written order:

"Under Strickland's mandate [(Strickland v. Washington, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984))], neither mistakes in strategy nor the fact that another attorney with the benefit of hindsight would have proceeded differently is sufficient to establish ineffective assistance of counsel. [Citation.] Indeed, to ruminate over the wisdom of counsel's advice is precisely the kind of retrospection proscribed by Strickland and its progeny. [Citations.]

A review of the transcripts reveals that most all of the avenues of defense had been cut off by January 3, 1980. The petitioner had been identified, the petitioner had given several different explanations[,] then admitted the crime to

11

an [a]ssistant State's Attorney. A psychiatrist was of the opinion that the

defendant was sane. A police officer was of the opinion that the petitioner had

been drinking but was not intoxicated. Defendant['s] counsel filed a defense of

insanity but the petitioner was not examined again for almost 17 months. The

balance of the transcript shows a stellar performance by defense counsel[. A]t

each turn he was on his game. He preserved an excellent record. Does the delay

in having the petitioner examined meet both prongs of the Strickland test[?] I

find it meets neither. It neither falls below an objective standard [nor,] as a result

of it, would the result have been different[.]"

Claims of ineffective assistance of counsel implicate a defendant's constitutional rights

under the state and federal constitutions. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I.

§8. The two-prong test for evaluating claims of ineffective assistance of trial and appellate

counsel is set out in Strickland, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. We

note in passing that ineffective assistance of counsel claims in the time frame of this trial were

controlled by the standards in People v. Greer, 79 Ill. 2d 103, 120-21, 402 N.E.2d 203 (1980).

The Greer standard was substantially similar to the one later adopted in Strickland, 466 U.S. at

687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064, and People v. Albanese, 104 Ill. 2d 504, 524-25,

473 N.E.2d 1246 (1984).

Ineffective assistance requires a showing that: (1) counsel's performance was deficient or

fell below an objective standard of reasonableness; and (2) defendant suffered prejudice as a

result of counsel's deficient performance. Strickland, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104

S. Ct. at 2064. The court need not decide whether counsel's performance was deficient if the defendant suffered no prejudice from the alleged errors. People v. Foster, 168 Ill. 2d 465, 475, 660 N.E.2d 951 (1995). Prejudice is shown when there is "a reasonable probability" that, but for counsel's ineffectiveness, the defendant's sentence or conviction would have been different. People v. Mack, 167 Ill. 2d 525, 532, 658 N.E.2d 437 (1995). On the specific question of whether counsel was competent despite failing to call or contact certain witnesses, the defendant must attach affidavits to his postconviction petition, showing the potential testimony of the witnesses and its significance. People v. Barr, 200 Ill. App. 3d 1077, 1081, 558 N.E.2d 778 (1990).

Here, the postconviction court reviewed the trial transcripts and found no reasonable probablity that, but for Stone's alleged ineffectiveness, defendant's convictions or sentences would have been different. The transcripts show overwhelming evidence against defendant. He was identified by witnesses as the offender, he gave inconsistent explanations as to why blood was on his clothing and he confessed to an assistant State's Attorney. Dr. Kaplan, the psychiatrist who examined him within days of the murder, found defendant was sane at the time of the offenses. A police officer testified that defendant had been drinking but was not intoxicated. With this evidence in the record before it, the postconviction court could have concluded that there was no reasonable probability that defendant would have been acquitted but for counsel's alleged errors. Nor did the postconviction court find Stone's performance to be deficient under the first prong of Strickland. The judge said Stone turned in "a stellar performance," was "on his game" and "preserved an excellent record." The judge found that

13

neither prong of Strickland was met. We believe that the court's conclusion comports with the record and the evidence presented at the evidentiary hearing. The postconviction court did not err in its application of Strickland or its denial of defendant's postconviction claim of ineffective assistance of trial counsel.

Defendant relies on People v. Popoca, 245 Ill. App. 3d 948, 615 N.E.2d 778 (1993), and Tillery v. United States, 419 A.2d 970 (D.C. Cir. 1980), to argue that a defense attorney is ineffective when he fails to present or adequately prepare expert witnesses to support his theory of defense. In Popoca, the defendant was convicted of attempted murder. He sought postconviction relief, claiming he was denied effective assistance when defense counsel failed to support his intoxication defense with expert testimony. Popoca, 245 Ill. App. 3d at 952. At an evidentiary hearing, a psychologist testified that the defendant had a history of substance abuse and that alcohol had affected his mental state. The court determined that trial counsel was ineffective in failing to present expert testimony that would have substantially strengthened defendant's claim of intoxication. Popoca, 245 Ill. App. 3d at 957. In Tillery, the court reversed the defendant's murder conviction, finding he was denied effective representation. Tillery, 419 A.2d at 976. The defendant's trial counsel failed to conduct even a rudimentary investigation that would have identified two doctors whose testimony would have supported an insanity defense. Tillery, 419 A.2d at 974.

Popoca and Tillery are readily distinguishable. In those cases, proof was offered that experts, had they been called, would have testified in support of the defendants' theories of defense. No such proof was offered here. There was no affidavit or testimonial evidence from

Dr. Mellinger to show that, if he had examined defendant, his opinion would have supported an insanity defense. Unlike the defendants in Popoca and Tillery, defendant here has not shown that Dr. Mellinger's testimony would have affected the outcome of his trial.

The same analysis applies to defendant's argument that Stone was ineffective for failing to present the testimony of lay witnesses at the crime scene who reported that a "crazy" person was in the subway. He cites People v. Williams, 38 Ill. 2d 115, 123, 230 N.E.2d 224 (1967), where the supreme court recognized a "general rule *** that nonexpert witnesses may give their opinion as to an individual's sanity based on their personal observations." In Williams, the court recognized that a lay person would be allowed to give an opinion that the defendant was insane at the time of the offense, but such testimony would be of little probative value. Williams, 38 Ill. 2d at 124. Here, the evidentiary hearing yielded no testimony or affidavits of lay persons who, if contacted by Stone, would have provided such conclusive evidence of defendant's mental state that the outcome of the trial would have changed. Stone did not render ineffective assistance by failing to investigate the possibility of testimony when it would have been of little probative value.

Defendant next claims that counsel will be judged ineffective where, as here, he decides to raise an insanity defense but then does not prepare for it. He cites foreign authority to support this claim: People v. Saunders, 388 N.Y.S.2d 142, 54 A.D.2d 938, 938-39 (1976); People v. Bryant, 77 Mich. App. 108, 258 N.W.2d 162 (1977); and People v. Nyberg, 140 Mich. App. 160, 362 N.W.2d 748 (1984). These decisions are not binding on Illinois courts (People v. Chandler, 88 Ill. App. 3d 644, 653, 411 N.E.2d 283 (1980)), but more importantly, the cases are

15

distinguishable. All three involved egregious circumstances where defense counsel failed to have the defendant examined by a mental health expert or failed to pursue what would have been a complete defense of insanity. Here, defense counsel had defendant examined by a psychologist, Dr. Wright, and advanced an insanity defense at defendant's trial.

Defendant next argues that he received ineffective assistance of counsel at his sentencing hearing when Stone declined to cross-examine two witnesses. Defendant claims he received a harsher sentence as a result. The postconviction court did not specifically comment in its written decision on Stone's effectiveness at sentencing. But its broad statement that the trial transcript in general showed "a stellar performance" by Stone supports the conclusion that the postconviction court did not perceive ineffective assistance at sentencing. Defendant contends that his claim of ineffective assistance of counsel at sentencing must be evaluated under Cronic, 466 U.S. 648, 80 L. Ed. 2d 657, 104 S. Ct. 2039. Where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." Cronic, 466 U.S. at 659, 80 L. Ed. 2d at 668, 104 S. Ct. at 2047. Defendant argues that Cronic applies because at the sentencing hearing, the State presented the testimony of two victims who said defendant approached them on the subway, threatened them with a knife and demanded money from them. Stone did not cross-examine the witnesses, claiming that his representation of defendant did not extend to defendant's other alleged crimes against those victims. Defendant claims that by not cross-examining the witnesses, Stone failed to subject the prosecution's case to "meaningful adversarial testing," especially since the other crimes were used as aggravating factors in

sentencing.

Our supreme court has applied the <u>Cronic</u> exception only in narrow circumstances. It was applied in <u>People v. Hattery</u>, 109 Ill. 2d 449, 464, 488 N.E.2d 513 (1985), where the defendant's attorneys made an unequivocal concession of the defendant's guilt. Defense counsel said the only issue at trial was whether the defendant should receive the death penalty. <u>Hattery</u>, 109 Ill. 2d at 464. The court concluded that defense counsel did not subject the prosecution's case to the "meaningful adversarial testing" required by the sixth amendment. Where a defendant proceeds to trial, the State must be held to its burden of proof. <u>Hattery</u>, 109 Ill. 2d at 465. Unlike <u>Hattery</u>, the presumption of prejudice as established in <u>Cronic</u> was not found in <u>People v. Johnson</u>, 128 Ill. 2d 253, 270, 538 N.E.2d 1118 (1989). In <u>Johnson</u>, there was overwhelming evidence of the defendant's guilt and no defense was available. The court determined that counsel could concede even murder without the presumption of prejudice if the concession could be beneficial in deflecting a more serious felony murder charge. <u>Johnson</u>, 128 Ill. 2d at 270. The court concluded that the <u>Cronic</u> presumption has limited applications: "the defendant faces a high burden before he can forsake the two-part <u>Strickland</u> test." <u>Johnson</u>, 128 Ill. 2d at 270.

We find this case to be more like <u>Johnson</u> than <u>Hattery</u>. Here, there was overwhelming evidence of defendant's guilt. Counsel did not concede defendant's guilt as in <u>Hattery</u>. We conclude the appropriate standard to apply is <u>Strickland</u>, not <u>Cronic</u>.

Defendant argues that under the two-pronged <u>Strickland</u> test, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064, counsel's failure to cross-examine the witnesses at sentencing

17

made the resulting sentence unreliable. The State argues that defense counsel's decision not to cross-examine the witnesses was a matter of trial strategy. The witnesses were victims of other crimes alleged to have been committed by defendant and their testimony on cross-examination could have revealed additional unfavorable evidence.

"Generally, the decision whether or not to cross-examine or impeach a witness is a matter of trial strategy which will not support a claim of ineffective assistance of counsel." People v. Pecoraro, 175 Ill. 2d 294, 326, 677 N.E.2d 875 (1997). Trial counsel renders ineffective assistance in cross-examining witnesses only if his approach is objectively unreasonable. Pecoraro, 175 Ill. 2d at 327. We believe that Stone's decision not to cross-examine the witnesses was a strategic choice that was not objectively unreasonable in light of the possibility that elaborations by the victims could have justified a harsher sentence. The court did not err in denying defendant's postconviction petition despite his claims of ineffective assistance at sentencing.

Defendant next argues that his postconviction petition should have been granted because appellate counsel was ineffective for failing to raise certain claims on direct appeal. The postconviction court concluded:

"Although it is axiomatic that a criminal defendant is guaranteed the effective assistance of counsel on appeal [citation], effective assistance in a constitutional sense means competent, not perfect, representation. [Citation.] *** As the Illinois Supreme Court has recognized:

[']A defendant who contends that appellate counsel rendered

ineffective assistance, [for example] by failure to argue [an] issue, must show that []the failure to raise that issue was objectively unreasonable[] and that, []but for this failure, [the defendant's conviction or sentence] would have been reversed.['] [People v. Richardson, 189 Ill. 2d 401, 412, 727 N.E.2d 362 (2000); [citations].]

*** Clearly, appellate counsel is under no obligation to brief every conceivable argument on appeal. [People v. Jackson, 205 Ill. 2d 247, 267, 793 N.E.2d 1 (2001); People v. Coleman, 168 Ill. 2d 509, 523, 660 N.E.2d 919 (1995); People v. Collins, 153 Ill. 2d 130, 140, 606 N.E.2d 1137 (1992); [citations].] 'It is not incompetence for counsel to refrain from raising those issues which, in his judgment, are without merit.' People v. Sanders, 209 Ill. App. 3d 366, 377, 568 N.E.2d 200 [(1991); [citations].]

Petitioner specifically faults appellate counsel for not raising each and every one of the issues raised in this [postconviction proceeding. A] review of the court's response to these issues find[s] this issue likewise without merit."

The postconviction court supports its conclusion with sound authority: Jackson, 205 Ill. 2d at 267 (appellate counsel is not obligated to raise every conceivable issue on appeal); Coleman, 168 Ill. 2d at 523, citing Collins, 153 Ill. 2d at 140 (appellate counsel's choice of the issues to be raised and argued will not be questioned unless his judgment was patently erroneous; and Sanders, 209 Ill. App. 3d at 377 ("It is not incompetence for counsel to refrain from raising those issues which, in his judgment, are without merit").

19

The court's conclusion is also supported by our supreme court's holding that where a defendant's claims in his postconviction petition were not meritorious, he suffered no prejudice when appellate counsel failed to raise them on appeal. People v. Enis, 194 Ill. 2d 361, 381, 743 N.E.2d 1 (2000).

Having concluded that the claims in defendant's postconviction petition were not meritorious and that appellate counsel cannot be faulted for failing to raise claims that lack merit, we cannot say that defendant suffered ineffective assistance of appellate counsel.

Applying a deferential standard of review to the court's conclusions drawn from the evidence presented at the hearing and the record before it, we conclude that the court did not err in denying defendant's petition.

The judgment of the circuit court is affirmed.

Affirmed.

J. GORDON and R.E. GORDON, JJ., concur.